UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK CHARLES BORG,

       Plaintiff,                          CIVIL ACTION NO. 11-11210

     v.                                DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF             MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 8, 9]**

Plaintiff Mark Charles Borg ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties filed summary judgment motions (Dkt. Nos. 8, 9), which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (Dkt. No. 2).

**I. RECOMMENDATION**

For the reasons set forth below, this Court finds that the Administrative Law Judge's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be **AFFIRMED**.

**II. REPORT**

 **A. Procedural History**

Plaintiff filed an application for disability on April 8, 2008, alleging that he became unable to work on June 2, 2006.[1] (Tr. 94.) The Commissioner initially denied Plaintiff's disability application on April 28, 2008. (Tr. 54-55.) Plaintiff then filed a request for a hearing and, on August 18, 2009, he appeared with counsel before Administrative Law Judge ("ALJ") John Heyer, who considered the case *de novo*. (Tr. 30-53.) In an October 21, 2009 decision, the ALJ found that Plaintiff was not disabled. (Tr. 6-14.) The ALJ's decision became the final decision of the Commissioner on January 21, 2011 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-3.) Plaintiff filed this suit on March 25, 2010. (Dkt. 1.)

 **B. Background**

Plaintiff was 53 years old at the time of the administrative hearing in this matter. (Tr. 33.) He has a high school education. (Tr. 128.) He recently worked as a driver for a tool and die company, a painter, and a cashier. (Tr. 34, 48.)

  *1. Plaintiff's Testimony*

At the December 7, 2009 hearing before the ALJ, Plaintiff testified regarding multiple impairments, including his back impairment and Carpel Tunnel Syndrome ("CTS"). (Tr. 36.) Plaintiff testified that he stopped working as a cashier because prolonged standing would result in back pain, and numbness in his legs and foot. (*Id.*) He also stated that he experienced soreness in his hands and elbow in the cashier position. (*Id.*)

---

[1] Plaintiff's date last insured is March 31, 2007. (Tr. 98.) Therefore, Plaintiff must establish that he was under a disability prior to March 31, 2007. *See* 20 C.F.R. § 404.131(a).

Plaintiff stopped working as a driver for a tool and die company, the job he held immediately before the cashier position, because he could not lift the dies off the truck. (*Id*.) He also had problems with numbness in his foot. (*Id*.)

Plaintiff also testified that he has had trouble walking, and experiences tremendous pain if he stands for more than five minutes. (Tr. 37-38.) He stated that he can sit for 15 or 20 minutes. (*Id*.) Plaintiff testified that back in 2006, he could lift around 20 pounds. (Tr. 40.)

Plaintiff testified that his daily activities include getting up with his wife at 6:00 a.m., taking his medication, reading the paper, watching the TV, watering plants, sitting on the patio and taking a nap between noon and 3:00 p.m. everyday. (Tr. 39, 43.) He stated that he does not shovel, cut the grass, or perform household chores. (*Id*.) He also stated that his legs swell everyday so he usually spends his days laying in bed with two or three pillows underneath his legs or in a chair with his legs elevated above his heart. (Tr. 41-43.) Plaintiff stated that he does not sleep well because his back pain wakes him up whenever he moves. (*Id*.)

### 2. Medical Evidence[2]

Plaintiff's medical evidence largely comes from Pain Management & Rehab Associates ("PMRA") of Farmington Hills, Michigan. (Tr. 165-291.) On June 8, 2006, Plaintiff reported to a physician at PMRA that he was experiencing back pain.[3] (Tr. 170.) The physician wrote a note indicating that he refilled Plaintiff's pain medications. (*Id*.) On July 19, 2006, Plaintiff told the same PMRA physician that he was still experiencing back pain. (*Id*.) The physician gave Plaintiff

---

[2] Evidence after Plaintiff's date last insured (March 31, 2007) is relevant only to the extent that it is probative of Plaintiff's condition prior to that date. *See Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1998); 20 C.F.R. § 404.131(a).

[3] The physician's signature is illegible.

a new medication for sleep and refilled his other medications. (*Id*.) On August, 8, 2006, Plaintiff reported that he was sleeping well, and was going on vacation. (*Id*.) The physician refilled his medications. (Tr. 170.) On October 6, 2006, the physician noted that Plaintiff had L5-S1 disc narrowing and spondylosis. (Tr. 169.) Plaintiff continued to see this physician for his pain through 2007. (Tr.166-69.)

On February 1, 2007, Dr. Rottenburg of PMRA gave Plaintiff a joint injection for sacrolitis.[4] (Tr. 195.) On February 2, 2007, Plaintiff saw Dr. Rottenberg for "[l]ow back pain radiating down the left lower extremity." (Tr. 193.) Dr. Rottenberg performed a number of diagnostics, and commented that Plaintiff's "[b]ilateral prolonged H-reflex distal latencies[5] may be due to radiculopathy[6] or peripheral neuropathy[7]." (Tr. 194.)

On March 8, 2007, Dr. Rottenberg diagnosed Plaintiff with "diminished dorsalis pedis pulses."[8] (Tr. 190.) On March 29, 2007 and on April 10, 2007, Plaintiff received lumbar epidural steriod injections for his radiculopathy. (Tr. 187, 189.) On October 23, 2007, Dr. Rottenberg again gave Plaintiff a joint injection for his sacrolitis. (Tr. 186.)

   *3. Vocational Expert's Testimony*

---

[4] Sacroilitis is "inflamation (arthritis) in the sacroiliac joint." *Dorland's Illustrated Medical Dictionary* 1687 (31st ed. 2007).

[5] Distal latencies indicates motor or sensory inactivity. *Dorland's Illustrated Medical Dictionary* 1022 (31st ed. 2007).

[6] "Disease of the nerve roots." *Dorland's Illustrated Medical Dictionary* 1595 (31st ed. 2007).

[7] A functional disturbance in the peripheral nervous system. *Dorland's Illustrated Medical Dictionary* 1287 (31st ed. 2007).

[8] Dorsal means "pertaining to the back." *Dorland's Illustrated Medical Dictionary* 570 (31st ed. 2007).

Vocational Expert ("VE") Sinella testified at the hearing. (Tr. 47-53.) The ALJ first asked the VE to describe Plaintiff's past relevant employment. (Tr. 48.) The VE classified Plaintiff's past relevant employment into the following positions: truck driver-delivery, painter, cashier, and retail attendant. (Tr. 48.)

The ALJ then asked the VE to consider the following hypothetical individual:

> An individual that could lift 20 pounds, and can alternate between sitting and standing to complete a full eight-hour day, so basically it's a sitting option . . . .

(*Id.*)

The VE testified that such a hypothetical individual could not perform Plaintiff's past relevant work, as performed by Plaintiff. (*Id.*) The VE testified that "there would be some cashier positions allowing for a sit-stand option." (Tr. 49.) The VE testified that there are 1,500 of these jobs available in the southeastern Michigan regional labor market. (*Id.*) In addition, the VE testified that there were approximately 1,500 of these jobs available in the same region at the sedentary level. (*Id.*)

The VE testified that there would be "other unskilled work at the light-exertional level allowing for a sit-stand option" that Plaintiff could perform as well. (*Id.*) These positions included: small products assembler, DOT 706.684-022; hand packer, DOT 559.687-074; and visual inspector-checker, DOT 222.687-010. (Tr. 50.) There are 2,500, 2,500 and 1,000 such positions available in the regional economy respectively. (*Id.*) Upon questioning from Plaintiff's counsel, the VE testified that the need to lay down four times a day to elevate one's legs would preclude competitive employment. (Tr. 51.)

**C. Framework for Disability Determinations**

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity "during the period from his alleged onset date of June 2, 2006 through his date last insured of March 31, 2007." (Tr. 11.) At step two, the ALJ found that Plaintiff had the following severe impairments: lumbosacral strain, lumbar degenerative disc disease, and lumbar radiculopathy. (Tr. 11.) Next, the ALJ concluded that none of these impairments, either alone or in combination, met or medically equaled a listed impairment. (*Id.*) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform "light work...except for the following limitations: lift 20 pounds and can alternate between sitting and standing." (Tr. 12.) At step four, the ALJ found that Plaintiff could perform his past relevant work as a cashier. (Tr. 13.) In the alternative, at step five the ALJ stated that there were "other jobs that existed in significant numbers in the national economy that the claimant also could have performed." (*Id.*) Therefore, the ALJ held that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 14.)

### E. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal

quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d

284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

**F. Analysis**

Plaintiff raises several argument on appeal, each argument is considered below:

*1. Substantial Evidence Supports the ALJ's Residual Functional Capacity Assessment*

Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment is flawed because he did not take into account Plaintiff's venous insufficiency or upper extremity problems. (Dkt. 8, Pl.'s Mot. Summ. J. at 6.)  Defendant responds that substantial evidence supports the ALJ's RFC because there is no evidence of Plaintiff's venous insufficiency or upper extremity problems during the relevant time period.  (Dkt. 9, Def.'s Mot. Summ. J. at 8.)

To be eligible for benefits, Plaintiff must not only establish his disability on or before his alleged onset date, but he must show that he suffered this disability prior to the expiration of his insured status.  *See* 42 U.S.C. §§ 423 (a)(1)(A), 423 (c)(1); 20 C.F.R. § 404.130.  The expiration of a Plaintiff's insured status is known as the date last insured (DLI).  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  Plaintiff's DLI is March 31, 2007.  (Tr. 97-98.) Thus, for Plaintiff's alleged venous insufficiency and/or upper extremity problems to be relevant to the ALJ's RFC, Plaintiff must show evidence of such conditions between June 2, 2006 and March 31, 2007.  Evidence of these conditions after March 31, 2007 is

only relevant to the extent that it is probative to the Plaintiff's conditions prior to that date. *Higgs*, 880 F.2d at 862.

The record illustrates that the ALJ reviewed the medical evidence between June 2, 2006 and March 31, 2007 and noted that "[i]n terms of [Plaintiff's] alleged back pain and upper extremity problems, the undersigned notes there is not much medical evidence after [Plaintiff's] alleged onset date and prior to his date last insured to support a finding of a disabling impairment." (Tr. 12.) This is true. There is also no evidence of venous insufficiency during this time period. (Tr. 162-248.) To the extent that Plaintiff had such a condition prior to this time period, there is simply no objective medical evidence supporting any limitations during the relevant time period. (*Id*.) Likewise, there is no evidence of carpal tunnel syndrome or cubital tunnel syndrom during the relevant time period. (*Id*.) At best, there is evidence of such conditions beginning in April 2008 – more than a year after Plaintiff's DLI. As such, the ALJ's RFC is supported by substantial evidence and the ALJ's findings should not be disturbed on appeal.

> 2. *The ALJ Was Not Obligated to Contact Plaintiff's Treating Physician Pursuant to* 20 C.F.R. § 404.1512(e)(1)

Plaintiff next argues that the ALJ erred in not contacting Plaintiff's treating physician pursuant to 20 C.F.R. § 404.1512(e)(1). Specifically, Plaintiff argues that upon finding that "no treating source has found [Plaintiff] to be disabled prior to March 31, 2007," the ALJ was obligated to contact Plaintiff's treating physician regarding his disability status. (Dkt. 8, Pl.'s Mot. Summ. J. at 8.)

20 C.F.R. 404. § 1512(e)(1) states that when the evidence received from a Plaintiff's treating physician is inadequate to determine whether a Plaintiff is disabled, the ALJ must recontact the

Plaintiff's treating physician for additional information to reach a decision. *See* 20 C.F.R. 404. § 1512(e)(1).

This regulation is essentially a precaution against ALJs or the Appeals Council being forced into making decisions regarding disability without adequate medical evidence. *See* 20 C.F.R. 404. § 1512(e)(1). However, it is not a mandate that the ALJ or Appeals Council recontact a treating physician when there is no opinion evidence on disability, but rather that they recontact the treating physician "[w]hen the evidence [they] receive from your treating physician or psychologist or other medical source is inadequate for [them] to determine whether you are disabled." *Id*. Indeed, the ultimate decision on disability is one for the ALJ not the treating source. *Kidd v. Comm'r of Soc. Sec*., 283 Fed. Appx. 336 (6th Cir. 2008); *Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1527(e). As such, I find that the ALJ was not obligated to contact Plaintiff's treating physician, as suggested by Plaintiff.

> *3. The ALJ's Failure to Inquire as to any Conflict between the VE's Testimony and the Dictionary of Occupational Titles was Harmless*

Social Security Ruling 00-4p requires an ALJ to "resolve any conflicts between a VE's testimony regarding jobs that a claimant can perform and the DOT's description of what is required to perform the jobs identified." SSR 00-4p, 2000 WL 1898704 at *3-*4 (S.S.A.).

Under this rule, the ALJ must inquire as to whether there is a conflict between the VE's testimony and the DOT's job descriptions. *See* SSR 00-4p, 2000 WL 1898704 at *3-*4 (S.S.A.); *Lindsley v. Comm'r Soc. Sec*., 560 F.3d 601, 603 (6th Cir. 2009) (citations omitted). Then, if indeed there is a conflict, the ALJ must obtain a reasonable explanation for the conflict. *See id.*

Here, the ALJ asked the VE to assume a hypothetical individual that could perform light work with a sitting option. (Tr. 48.) The VE testified that such a person could not perform Plaintiff's past work as performed by the Plaintiff, but could perform work as a cashier, small products assembler, hand packager, inspector-checker as defined by the DOT. (Tr. 48-50.) The ALJ did not ask the VE if these jobs conflicted with the information provided in the DOT if there was an additional limitation of a sitting option. (Tr. 48-50.)

However, the DOT is silent as to whether these jobs permit a sitting option. *See, e.g.*, DOT 211.462-211 (cashier), 1991 WL 671840 (G.P.O.); *see also Fort v. Comm'r Soc. Sec.*, No. 09-11128, 2010 WL 3789598 (E.D. Mich. Sept. 22, 2010). There cannot be a conflict when there is nothing to contradict. Therefore, any error on the part of the ALJ in failing to affirmatively ask the VE if her testimony conflicted with the DOT was harmless. *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)).

### 4. The ALJ Did Not Err in Finding Plaintiff Capable of Light Work with a Sit-Stand Option

Plaintiff also argues that ALJ erred in finding Plaintiff capable of light work with a sitting option because the two concepts are incompatible. (Dkt. 8, Pl.'s Mot. Summ. J. at 11.) However, 20 C.F.R. § 404.1567(b) and § 416.967(b) define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.* To be considered capable of performing a full

> or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Notably, Plaintiff was not found to be able to do a "full or wide range of light work," so he did not have to be able to perform all the activities in the category. (Tr. 48.) The ALJ specifically limited Plaintiff to jobs within this category that had an option to alternate between sitting and standing. (Tr. 12, 48.) Since some jobs in the light work category involve sitting most the time, this Court finds that light work and a sitting option are not *per se* incompatible. Therefore, substantial evidence supports the ALJ's RFC finding.

### G. Conclusion

For the reasons set forth above, this Court finds that the Administrative Law Judge's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be **AFFIRMED**.

### III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not

preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                       s/Mark A. Randon  
                                       Mark A. Randon  
                                       United States Magistrate Judge

Dated: December 11, 2011

### CERTIFICATE OF SERVICE

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 11, 2011.*

                                       *s/Melody R. Miles*  
                                       *Case Manager to Magistrate Judge Mark A. Randon*  
                                       *(313) 234-5542*